The judgment of the United States Customs Court is *affirmed.*

LENROOT, Judge, dissents.

UNITED STATES *v.* H. A. CAESAR & Co. (No. 3286)[1]

---

[1] T. D. 44067.

United States Court of Customs and Patent Appeals, May 19, 1930

*Charles D. Lawrence,* Assistant Attorney General (*William H. Futrell* and *Oscar Igstaedter,* special attorneys, of counsel) for the United States.
*Allan R. Brown* for appellee.

[Oral argument April 17, 1930, by Mr. Igstaedter and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The merchandise in this case consists of lace known as Alençon lace, and the appeal relates to its classification. It was assessed by the collector, under the first portion of paragraph 1430 of the Tariff Act of 1922, at 90 per centum ad valorem. The importer made protest, claiming the articles to be dutiable as embroideries, not specially provided for, at 75 per centum ad valorem, under the second part of said paragraph.

The Customs Court sustained the protest and the Government has appealed to this court.

It appears that Alençon lace is the name given to a particular article which is produced by having certain stitching upon an existing design. The article upon which this stitching is done is a usable lace before being so stitched, and is known as shadow lace. It becomes of the type known as Alençon lace only by reason of the stitching upon the design.

The opinion of the Customs Court, prepared by Mr. Justice Tilson, is quite an elaborate one and reviews at length a number of the decisions which have been rendered by that court and this, arising under the perplexing language of paragraph 1430.

In the concluding part of the opinion it is said:

The merchandise in question, it seems to us, falls clearly within the definition of "embroidery," as adopted by the courts. Regardless of the character of the machine used, or the nature of the stitch employed, that the forms, figures, de-

signs, or patterns on the lace in question are produced by means of needle and thread upon an otherwise completed textile, is clearly established by the record. An inspection of the samples in evidence is sufficient to demonstrate, even to the lay eye, that these forms, figures, designs, or patterns are decorative and ornamental.

Therefore, on the record presented, following the authorities cited and quoted, and for the reasons stated herein, we hold the so-called Alençon lace in question to be embroidered, and under the authority of *United States* v. *Smith*, 12 Ct. Cust. Appls. 384, T. D. 40554, *Pustet* v. *United States*, 13 Ct. Cust. Appls. 530, T. D. 41396, and *United States* v. *Field*, 15 Ct. Cust. Appls. 254, T. D. 42263, properly dutiable as embroidered articles under the latter part of paragraph 1430 of the Tariff Act of 1922, at the rate of 75 per centum ad valorem, as claimed by the plaintiffs.

The Government has assigned as error the refusal of the trial court to admit certain testimony, including that of certain witnesses called "to show the commercial distinction between stitches outlining a pattern and embroidery."

We think there was no error in this. In *Kotzin Bros. et al.* v. *United States*, 14 Ct. Cust. Appls. 99, 104, T. D. 41589, this court said:

We are of opinion that by the use of the language "by whatever name known" in paragraph 358 [act of 1913], *supra*, the Congress intended, for the purposes of that paragraph, to prevent the application of the rule of commercial designation. It was plainly intended, we think, by the phrase "by whatever name known" to include within the paragraph all embroidered articles commonly or commercially so known, except such as were more specifically provided for.

The correctness of this rule was specifically recognized in the more recent case of *Robinson-Goodman Co. (Inc.)* v. *United States*, 17 C. C. P. A. 149, T. D. 43473, wherein we said:

If artificial flowers are trimmings or ornaments within the meaning of paragraph 1430, the fact that they are known in commerce and trade as artificial flowers and not as trimmings or ornaments would be immaterial, for in such case the language "by whatever name known," etc., would be sufficient to bring them within the provisions of paragraph 1430.

The issue in the latter case lay between paragraphs 1430 and 1419, and proof of commercial designation of "trimmings" was admitted to aid in determining whether the articles fell under 1430. In the instant case the issue is between two parts of the same paragraph, both of which parts carry the same phrase—"by whatever name known."

The other evidence excluded seems to have been directed to the common meaning of certain words and phrases, and we do not think its exclusion constitutes reversible error. "Evidence of common meaning is admissible but acts only as an aid to the memory and understanding of the court. The court is not obliged to accept it." *Vide United States* v. *Ben Felsenthal & Co.*, 16 Ct. Cust. Appls. 15, 18, T. D. 42713, and cases therein cited.

It appears that the particular type of lace known as Alençon lace is produced by a certain stitching upon the design of another type of

finished lace, and without the stitching it would not be Alençon lace. The Government insists that this stitching consists in the sewing of a cord "outlining the pattern of the lace on the surface thereof," in some instances by hand and in other instances by machine. The importer insists that it is "simply ornamental stitching and nothing sewn on," and that the process renders the articles "embroidered" in the sense of the latter portion of paragraph 1430.

It appears that the cord effect which is produced by the stitching results from the use of two threads or cords, one being larger than the other, and the method is that which is known as lock-stitching.

This being true, we do not think the theory of the Government that it is appliqué work can be sustained in the light of prior decisions by the court. Indeed, were it produced by stitching a cord upon the design by means of thread sewed over and around it, in the ordinary way, for ornamental purposes, this would not render it appliquéd under the doctrine declared by us in the recent case of *United States* v. *Greenwald's Linen Importers*, 17 C. C. P. A. 241, T. D. 43672, in which we followed the definition of "appliqué" as adopted in our prior decision in *United States* v. *Hamburger Levine Co.*, 5 Ct. Cust. Appls. 217, T. D. 34382, and reiterated in *Loewenthal & Co.* v. *United States*, 6 Ct. Cust. Appls. 209, T. D. 35464.

In *Greenwald's* case this court, speaking through Judge Lenroot, reviewed a number of decisions involving the use of the word "appliqué," and held that the handkerchief cases there involved were not appliquéd by reason of having silk cord sewn upon them, the cords not being "cut out of another color or stuff, applied or transferred to a foundation."

We are unable to agree with the Government that the several cases cited by it in support of its contention upon this point do in fact support it. They, in the main, are decisions by the Board of General Appraisers and no one of them appears to be on all fours with the case at bar. Our conclusion upon this phase of the case does not appear to be contrary to those decisions, and we feel that in any event we should be governed by our own prior decisions, unless those decisions upon reconsideration appear to be erroneous.

Another contention of the Government is that since the articles do not become Alençon lace except by reason of the stitching described, such stitching is a finishing operation resulting in lace and not in embroidery. Conceding that the stitching is finishing work for a particular type of lace the fact remains, nevertheless, that it is imposed upon an article which was a finished lace of another type, dealt in as a commercial article, before being so stitched, and the stitching so done is not for utilitarian but for ornamental purposes, and we feel that this embellishment constitutes embroidering in the common meaning of that term.

In *Neuss, Hesslin & Co.* v. *United States*, 142 Fed. 281, 282, the United States Circuit Court for the Southern District of New York held "tidies or covers with open work patterns formed therein, the threads and edges of which have been stitched in ornamental design by hand," to be embroidered. It was there said:

> The Board has found that these tidies are ornamentally worked by hand with a needle and thread, and this constitutes embroidery.

"Embroidery" is defined by the Standard Dictionary to be—

> Ornamental work done with a needle on canvas, cloth, leather, etc., * * *. The work may be done by hand or with machinery, and threads of cotton, silk, silver, gold, etc., may be used; but embroidery is work always added to the completed fabric by means of a needle.

The New International Encyclopedia says:

> The term "embroidery" is always applied to a completed fabric; and the art is thus distinguished from the kindred arts of tapestry and lace making, in which the ornament is part of the structure of the material.

Under the authorities it appears that if the stitching done upon the fabric is for the purpose of utility it does not constitute embroidering; if for the purpose of ornamenting or embellishing the design of a fabric already completed, as appears to be the fact in the case at bar, then it is to be classed as embroidery, such as does not seem to be provided for other than in the latter portion of paragraph 1430. *Vide United States* v. *Waentig*, 168 Fed. 570.

The instant case, we think, is clearly distinguishable from the cases of *Sloane* v. *United States*, 7 Ct. Cust. Appls. 463, T. D. 37049, and *United States* v. *Field*, 10 Ct. Cust. Appls. 183, T. D. 38550, and the opinion of the Customs Court does distinguish them. The two latter cases involve tapestry, and the needlework upon the fabric was to make them tapestry.

In the recent case of *Ramig & Co.* v. *United States*, 17 C. C. P. A. 365, T. D. 43809, we quoted from what we regarded as the leading prior cases applicable thereto, and it was held that embroidered flouncings composed of net are dutiable at 75 per centum under paragraph 1430 as "embroideries not specially provided for," etc., although flouncings are *eo nomine* provided for in the first portion of the paragraph. In support of this holding we quoted from the cases of *United States* v. *Goldfrank*, 16 Ct. Cust. Appls. 340, T. D. 43081; *United States* v. *Field*, 15 Ct. Cust. Appls. 254, T. D. 42263; and *United States* v. *Smith*, 12 Ct. Cust. Appls. 384, T. D. 40544.

We think the reasoning in those cases is applicable to, and controlling in, the case at bar.

The thorough treatment of the issues in the opinion of the trial court, T. D. 43606, renders it unnecessary for us to discuss them in detail.

The judgment of the Customs Court is *affirmed*.

CONCURRING OPINION

GRAHAM, Presiding Judge: I concur in the conclusion arrived at in the majority opinion, but can not concur in all of the language used in the opinion of my esteemed associate, Judge Garrett. I conclude, from an inspection of the record, that the Alençon lace in issue is embroidery not specially provided for, and is properly dutiable under the second subdivision of paragraph 1430 of the Tariff Act of 1922, at 75 per centum ad valorem. This is in harmony with *United States v. Smith*, 12 Ct. Cust. Appls. 384, T. D. 40544, *Kayser & Co. v. United States*, 13 Ct. Cust. Appls. 474, T. D. 41367, *United States v. Field*, 15 Ct. Cust. Appls. 254, T. D. 42263, and *United States v. Goldfrank*, 16 Ct. Cust. Appls. 340, T. D. 43081.

In *Kotzin Bros. et al. v. United States*, 14 Ct. Cust. Appls. 99, T. D. 41589, we had under consideration certain clocked woolen hosiery, which was assessed for duty by the collector at 75 per centum ad valorem as embroidered articles under the second section of said paragraph 1430, and was claimed to be dutiable under paragraph 1114 of said act, as hose in chief value of wool. It was claimed in that case that the clocking, although put on by an embroidery stitch, was not known in the trade as embroidery, but as clocking. In discussing the proposition we said:

We are of opinion that by the use of the language "by whatever name known" in paragraph 358, *supra*, the Congress intended, for the purposes of that paragraph, to prevent the application of the rule of commercial designation. It was plainly intended, we think, by the phrase "by whatever name known" to include within the paragraph all embroidered articles commonly or commercially so known, except such as were more specifically provided for.

This seemed to be the established law until our decision in *Robinson-Goodman Co. v. United States*, 17 C. C. P. A. 149, T. D. 43473.

The majority opinion in the matter now before us goes upon the theory that the correctness of the rule announced in the *Kotzin* case, *supra*, was specifically recognized and followed in the said *Robinson-Goodman Co.* case.

In this respect I can not concur. I think there is, as was pointed out in the dissenting opinion by Judge Hatfield, in the *Robinson-Goodman Co.* case, a hopeless and irreconcilable conflict between the *Kotzin* case and the *Robinson-Goodman Co.* case. In the *Robinson-Goodman Co.* case, trimmings were involved which are specifically mentioned in the first portion of said paragraph 1430, and which were claimed by the importer to be dutiable as artificial flowers. In *Blumenthal & Co. v. United States*, 14 Ct. Cust. Appls. 17, T. D. 41531, we had had the same articles before us, and, in that case, we had held that even though the articles in question might have been known as artificial flowers, if they were trimmings and ornaments, the name by which they were known was immaterial and they must be classified under paragraph 1430.

In my opinion, the *Robinson-Goodman* case, *supra*, announced a different rule, although the opinion filed in that case purported, in one instance at least, to give it approval. In the *Robinson-Goodman Co.* case, as I have said, the same material was involved as in the *Blumenthal* case. The opinion proceeds to recite that the lower court found "that all of the merchandise was generally and uniformly known and designated in the trade as artificial flowers, and not as trimmings or ornaments." Thereupon the court proceeded in the following language: ·

The first question to be considered is whether this case is distinguishable from the *Blumenthal* case so far as the facts proved are concerned. Appellant points out that in the *Blumenthal* case no evidence was adduced to show what are trimmings and ornaments as these terms are used in trade and commerce; that no evidence was offered in that case to show that, in addition to these words being specific, there are things known by other names which are similar in kind and character to the things specified in paragraph 1430, and which are imported and dealt with at wholesale under the general name of trimmings and ornaments; and which are thus covered by the words "all the foregoing  *  *  *  by whatever name known." That such evidence was absent in the *Blumenthal* case and was adduced in the present case is a fact. Appellant also points out that the legislative history of paragraph 1430 was not introduced in the *Blumenthal* case but is a part of the record in this case.

The case turns upon the definition of the words "trimmings" and "ornaments." It is very evident that in the *Blumenthal* case this court applied the ordinary meaning of these terms as defined in the dictionaries, and upon the record in that case it was justified in so doing, there being no proof of commercial designation restricting the ordinary meanings of these words. The court below in this case has also applied the ordinary or common meaning of the words. There is, however, in this case that which was absent in the *Blumenthal* case—proof of commercial designation of the words "trimmings" and "ornaments," at the time of the passage of the Tariff Act of 1922. It requires no citation of authority to. the point that if commercial designation is found to exist, such designation fixes the character of the article for the purposes of the tariff law, unless a different legislative intent is shown.

*  *  *  If there be in fact a restricted meaning of these words as used in commerce and trade, the phrase "by whatever name known" does not enlarge the class, but serves to include within the class every article comprehended by these terms as used in commerce and trade, regardless of the fact that such articles may have other and different commercial designations. The record in this case convinces us that the words "trimmings" and "ornaments" did not in commerce and trade, at the time of the passage of the Tariff Act of 1922, have the same meaning as is given to those terms by dictionary definitions. *  *  *

There was no proof of this character in the *Blumenthal* case, and holding as we do that commercial designation has been proved in the present case, it is our duty to give to the words "trimmings" and "ornaments" the meaning that they had · in trade and commerce at the time of the passage of the Tariff Act of 1922;

*      *      *      *      *      *      *

We are therefore compelled to hold that the words "trimmings" and "ornaments," as used in trade and commerce, do not include artificial flowers, and did not at the time of the passage of the Tariff Act of 1922, and therefore such articles are not dutiable under the provisions of paragraph 1430, but are dutiable under paragraph 1419. Had the proof in this case upon the meaning of the words

"trimmings" and "ornaments" been the same as in the *Blumenthal* case we should have adhered to our ruling in that case; but the proof in this case showing, as it does, a commercial designation restricting the ordinary meaning of those words, which was not shown in the *Blumenthal* case, we are led to a different conclusion as to the classification of artificial flowers.

I think I have shown by the foregoing excerpts that the majority opinion filed in the *Robinson-Goodman* case was based upon proof of commercial designation. It will be observed, however, that Judge Bland, who specially concurred in the conclusion in that case, did so not upon the theory that evidence of commercial designation was proper or of any force in the case, but rather upon the theory that the imported articles were, in the common meaning of the term, artificial flowers, and not trimmings. The *ratio decidendi* of the majority opinion in the *Robinson-Goodman* case, therefore, did not meet with the approval of a majority of the court, and the case is not authority in the case now at bar.

As this judgment, however, follows the *Kotzin* case, *supra*, and the other cases heretofore cited herein, dating back to *United States* v. *Smith, supra,* I concur in the conclusion that the judgment of the court below should be *affirmed*.

HATFIELD, Judge, concurs in the special concurring opinion of Presiding Judge Graham.

DISSENTING OPINION

BLAND, Judge: I can not agree with the conclusion reached by the majority. I do not disagree with the view expressed that within the common understanding, if ornamental needlework is superimposed upon cloth, the cloth may be said to be embroidered, but I do disagree with the holding that there was no error in the trial court's refusal to permit the Government to prove that the character of stitching upon the textile under consideration did not make it an embroidered article.

The majority view is that this question is controlled by the case of *Kotzin Bros. et al.* v. *United States,* 14 Ct. Cust. Appls. 99, 104, T. D. 41589. It has been our consistent holding that commercial proof was not admissible to prove that an *article* named, if it in fact be that article, is known by some other name. The reason for holding that such proof could not be made is on account of the fact that Congress used the phrase "by whatever name known." The *article* in this case is *lace* and the phrase "by whatever name known" was intended to mean that if it in fact was lace it could not be taken out of the paragraph by proving that it was known by some other name. But here the importer insists, and the majority view agrees with such insistence, that the words "by whatever name known" apply to the word "embroidered" which is a modifying word, modifying the word

"article," and found in the second part of the paragraph. If the merchandise is described under the second part of the paragraph, it is described by the provision for "all fabrics and articles embroidered in any manner by hand or machinery." The phrase following the provision "by whatever name known" refers to "articles" and not to the words "embroidered in any manner," etc.

No one connected with this case has been able to assign any plausible reason why the phrase "by whatever name known" should be regarded as modifying or limiting the term "embroidered in any manner," etc., except to say that this court passed upon the question in the *Kotzin* case, *supra*, when it used the following language:

> We are of opinion that by the use of the language "by whatever name known" in paragraph 358 [act of 1913], *supra*, the Congress intended, for the purposes of that paragraph, to prevent the application of the rule of commercial designation. It was plainly intended, we think, by the phrase "by whatever name known" to include within the paragraph all embroidered articles commonly or commercially so known, except such as were more specifically provided for.

It would seem that the *Kotzin* case may be said to support the contention here urged by the importer. I hardly think the conclusion reached here was fully considered in the *Kotzin* case. If it was, it is my view that the quoted portion of the *Kotzin* case should not be followed by this court, since it leads us so far afield as, in my judgment, to give to the words "by whatever name kown" an application never intended by the legislature.

I think the judgment of the United States Customs Court should be *reversed* and the cause *remanded* for a new trial where the testimony offered by the Government could be received and considered.